IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE RAYMOND ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 11-3541-CV-DPR |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

An Administrative Law Judge ("ALJ") denied Social Security Disability Insurance Benefits and Supplemental Security Income to Plaintiff Lawrence Arnold in a decision dated June 24, 2010 (Tr. 9-17). The Appeals Counsel denied review (Tr. 1-3). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. For the reasons set forth below, the decision of the Commissioner of Social Security is **AFFIRMED**.

### FACTUAL BACKGROUND

Claimant Arnold sought disability benefits alleging arthritis, a skin disorder, hepatitis, a neck injury, and post traumatic stress disorder. Arnold alleged the onset of his disability from November 15, 2007. He claimed past work as a construction contractor (Tr. 164).

*Medical Records*

Arnold's medical records show that he sustained a gunshot wound while serving in Vietnam in 1968. A bullet entered his right shoulder and exited his left shoulder. He has experienced neck, left shoulder, and left arm pain and numbness since the injury (Tr. 231).

Arnold was medically evaluated at the Veterans Administration Medical Center in Fayetteville, Arkansas in May 2008. Records show that he continued to experience left neck and shoulder pain, stiffness, and weakness, with a limited range of motion. It was determined that degenerative joint disease of the shoulder and elbow caused Arnold only mild problems, but the accompanying muscle weakness caused moderate and severe difficulties with the activities of daily living (Tr. 231-38). It was determined that his muscle weakness severely limited his ability to do chores, go shopping, exercise, participate in sports, recreate, feed himself, and groom himself; and moderately limited his ability to travel, bathe, dress, and toilet (Tr. 238).

Testing and evaluation also revealed limited range of motion in the cervical spine, with disc space narrowing and significant degenerative disc disease at C5-6. Examination of the lumbar spine revealed narrowing on the L5-S1 disc space, moderate osteophytic changes from L2-S1, and sclerosis of the lumbar facet joints throughout the lumbar spine bilaterally (Tr. 239-245).

Arnold also suffers from chronic rashes on his hands. In November 2007, he saw Robert Scott, M.D., his primary care physician, who assessed his skin rash as "stable" (Tr. 278). Dr. Scott referred Arnold to Dr. Jay Pearcy, a dermatologist, for treatment of the rash (Tr. 285). On September 4, 2008, Dr. Pearcy opined that Arnold suffered from either eczema or psoriasis of the hands. He recommended that Arnold stop taking Atenolol because it could be causally related to the rash.[1] Dr. Pearcy prescribed Clobetasol ointment (Tr. 344-45). On October 16, 2008, Arnold reported to Dr. Pearcy that he had not used the Clobetasol very much because it was very greasy. Dr. Pearcy noted little improvement in his hands. He prescribed Clobex lotion in addition to the Clobetasol ointment (Tr. 242-43). On February 6, 2009, Dr. Pearcy reported the Clobex lotion

---

[1] Atenolol is used to treat high blood pressure, prevent chest pain, and improve survival after a heart attack. Atenolol is classified as a beta blocker, which relaxes blood vessels and shows heart rate to improve blood flow. MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684031.html (last visited March 25, 2013).

was working "very well." He noted Arnold continued to have problems with his fingertips. He also noted Arnold's prescribing physician had removed him from Atenolol. Dr. Pearcy recommended that Arnold continue to use Clobex lotion (Tr. 340-41). The medical records indicate that Arnold did not see Dr. Pearcy again for over a year, until February 19, 2010. Arnold reported he continued to use Clobetasol ointment and Clobex lotion. Arnold complained, however, that his feet had also broken out, causing him difficulty standing for long periods of time. Dr. Pearcy diagnosed him with "Psoriasis greater than eczema" and prescribed Ultravate ointment (Tr. 338-39).

Arnold saw Roger Cady, M.D., on October 28, 2008. Dr. Cady reported that Arnold "was seen by a dermatologist who felt that the skin rash he is having in his hands could be secondary to his beta-blocker." Dr. Cady agreed to "wean him off" the beta-blocker (Tr. 300). On January 19, 2009, Dr. Cady noted Arnold's recent difficulty with fine motor control and decreased sensation in his left hand. Dr. Cady also noted "deep fissures that are painful" in both of his hands. Dr. Cady noted "moderate" improvement with Clobex lotion. Dr. Cady reported that after stopping the Atenolol, Arnold's hands improved significantly, "but subsequently [he] has had recurrence of the lesions." Dr. Cady also noted continued left shoulder pain for which Arnold takes Celebrex (Tr. 303). On March 19, 2009, Dr. Cady also prescribed Bag Balm with hydrocortisone for his hands (Tr. 359).

Arnold was seen at the University of Missouri Dermatology Clinic in June 2009. The physician notes document his history of cracking and bleeding hands for one and one half years, and treatment with Clobex lotion, hydrocortisone, udder balm, emu cream, and multiple over-the-counter lotions and creams. The report indicates that Arnold played golf "a lot," and had very tanned skin. It was recommended that Arnold continue Clobetasol, soak his hands, and wear gloves to bed after night-time application of ointment (Tr. 334-35).

3

On December 9, 2009, Arnold saw Michael Hoeman, M.D. at the Wheeler Heart & Vascular Center in Springfield, Missouri, for a comprehensive evaluation. Dr. Hoeman noted hypertension, hyperlipidemia, mild glucose intolerance, chronic head and neck pain related to degenerative joint disease. Regarding the rash, Dr. Hoeman noted Clobetasol seemed to "work well for him" (Tr. 323).

On March 25, 2010, Dr. Cady evaluated Arnold for a disability rating. Dr. Cady noted a clear and alert mental status, a large scar on the left side of his neck from the gunshot wound about which he stated, "He is exquisitely sensitive and hypersensitive in this area." Dr. Cady noted "marked eczema-type reaction that is under care with a dermatologist." Regarding Arnold's left shoulder and arm, Dr. Cady stated,

> He has clear evidence of brachial plexus injury with decreased biceps and brachioradialis reflex. Decreased pinprick sensation in the left arm. Also, strength is markedly decreased. Examination of lower extremities reveals some modest weakness on the left. DTRs are equal in the lower extremities.

Dr. Cady concluded, "My impression is that he continues to suffer from medical impairment related to gunshot and subsequent brachial plexus injury incurred while he was in Vietnam. This clearly affects his ability to be fully employed" (Tr. 357).

*Medical Opinions*

Dr. Cady also completed a Medical Source Statement (MSS). He recommended that Arnold could frequently lift less than five pounds with his left arm, but 25 pounds frequently with his right. He opined that Arnold could occasionally lift and carry less than five pounds with his left arm, but over fifty pounds with his right. He recommended that Arnold could stand and walk continuously for an hour at a time, and for a total of four hours in an eight-hour day. He opined Arnold could sit for thirty minutes at a time, and for less than one hour total in an eight-hour work day. He could push and pull an unlimited amount with his right arm and leg, but had decreased

4

strength in his left side for pushing and pulling. He determined that Arnold could never climb, balance, stoop, kneel, or crouch, but could occasionally crawl; could never reach with his left hand, but occasionally with his right; could never handle with his left hand, but frequently with his right; could never finger or feel with his left hand but frequently with his right; could never see with near acuity, frequently see with far acuity, and occasionally see with depth perception; frequently speak; and occasionally hear. He advised that Arnold should avoid any exposure to extreme cold, dust, or fumes; hazards and heights; avoid moderate exposure to weather, wetness and humidity, and vibration, and should avoid concentrated exposure to extreme heat. He recommended that Arnold would be required to lie down or recline to alleviate pain every fifteen minutes for ten minutes at a time. He recommended that Arnold's pain would cause a decrease in his ability to concentrate (Tr. 377-78).

*ALJ Opinion*

The ALJ found that Arnold had the following severe impairments: hypertension; hyperlipidemia; eczema; psoriasis; degenerative joint disease of the cervical and lumbar spine; and a left brachial plexus injury secondary to gunshot wound (Tr. 11). The ALJ found that the claimant does not suffer from an impairment or combination of impairments that meet or medically equal a listed impairment. He determined that Arnold had the residual functional capacity (RFC) to perform light work as defined in the regulations, except that he cannot repetitively push and/or pull with the upper extremities, has only limited extension of the left shoulder, and limited neck flexion. He can crawl, stoop, squat, and kneel occasionally, climb frequently, power grip occasionally, handle, finger, and feel frequently; but he does not possess the fine motor skills to handle small items such as jeweler's tools. In finding this RFC, the ALJ found that Arnold's complaints of total incapacitation were unsupported by the medical and other evidence in the record.

Further, the ALJ afforded little weight to the opinion of Dr. Cady. The ALJ recognized that Dr. Cady was a treating source, but found his assessment inconsistent with his own treatment notes and with the overall medical record which does not support the "extreme degree of incapacity found in Dr. Cady's Medical Source Statement" (Tr. 16). Finally, the ALJ found that Arnold was capable of performing past relevant work as a contractor.

*ALJ Hearing*

Arnold appeared at the hearing held May 17, 2010, with counsel. He testified that he takes Celebrex for the pain in his neck and shoulder, but receives no other treatment. He testified that he mows his lawn with a riding lawnmower, and trims weeds, but must take breaks every two hours. He testified that he plays golf twice a week, as exercise for his neck and shoulder. He testified that the pain and numbness in his fingers (presumably from the rash) does not interfere with playing golf because he grips the club with his palm. He testified that his hands and feet break out, causing sores and ruptured skin. He testified that he cannot stand very long in one position due to the sores on his feet. He also has difficulty holding onto items without dropping them. Regarding the pain in his neck and left shoulder, Arnold testified that the pain comes and goes, sometimes for days, but other times he will go a week without pain. He testified his ability to move his neck is limited by pain. He testified that because of his painful rash, he is unable to button buttons. He testified that he experiences low back pain daily. He is unable to sit for more than two hours at a time without having to get up and stretch or move around. He testified that he lies down for four hours in an eight-hour day. He testified he still has nightmares about his service in Vietnam. Based on a hypothetical posed by the ALJ, a vocational expert testified at the hearing that Arnold was capable of doing his past work as a contractor.

6

## LEGAL STANDARDS

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005). If the claimant does not have a listed impairment, but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other job that exists in the national economy. *Id*.

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*,

305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence, and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

*Credibility Determination*

Arnold argues that the ALJ erred in finding his subjective complaints not credible. In assessing a claimant's credibility, an ALJ must consider 1) the claimant's daily activities; 2) the duration, intensity, and frequency of pain; 3) the precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ is not required to explicitly discuss each *Polaski* factor, so long as the ALJ acknowledges and considers them before discounting a claimant's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). An ALJ may find a claimant's allegations not credible where there exist "inconsistencies in the record as a whole." *Id.* A court will defer to an ALJ's

credibility determination "if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)).

Substantial evidence on the record as a whole supports the ALJ's determination that Arnold's subjective complaints are not credible. The ALJ considered the factors set out in *Polaski,* including Arnold's activities, pain, medications, functional limitations, work history, and available medical evidence. The ALJ specifically identified inconsistencies between Arnold's testimony regarding his pain and his report that he is capable of mowing the lawn and trimming weeds, and the evidence in the record that Arnold played golf regularly. At the hearing, the ALJ specifically inquired how often Arnold played golf. Arnold stated twice a month, but when asked for more details, he stated that he would play golf once during the week with his wife, then again on Sundays. When the ALJ asked specifically how he was able to play golf considering his own claims of disability, Arnold stated first that he had no trouble gripping the club with his palms, then stated that golf is good exercise for his shoulder injury. The ALJ also noted Arnold has received only conservative treatment with medications, without needing additional treatment, hospital confinement, or surgical intervention. Furthermore, the record indicates that Arnold's pain is well-controlled by Celebrex, and his rashes had improved with various ointments and creams. Moreover, despite his complaints of total disability, Arnold testified that at times a week will pass during which he experiences no pain. In the Court's view, these inconsistencies constitute "good reasons" for discounting Arnold's testimony regarding the severity of his subjective complaints. The ALJ could have more specifically described his findings that Arnold's subjective complaints lacked credibility, yet, his conclusion is supported by substantial evidence on the record as a whole and remains within the ALJ's "zone of choice." Thus, the Court finds no basis in the record to overturn the ALJ's credibility

9

determination.

*RFC Determination*

Arnold argues that the ALJ's RFC calculation is flawed because the ALJ did not adopt Dr. Cady's severe lifting limitations on Arnold's left arm. An ALJ's RFC determination must be supported by some medical evidence. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). But the RFC determination "is not limited to considering medical evidence exclusively." *Cox*, 495 F.3d at 619. "Although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." *Ellis*, 392 F.3d at 994 (citing 20 C.F.R. § 404.1527(e)(2)).

The Court finds that the ALJ's RFC determination is based upon substantial evidence in the record. Dr. Cady recommended that Arnold could lift and carry less than five pounds with his left arm, but found that he could frequently lift and carry 25 pounds and occasionally lift and carry 50 pounds with his right arm. The ALJ determined that Arnold was capable of light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b). The Court does not view the ALJ's determination as inconsistent with Dr. Cady's opinion that Arnold could lift 25 pounds frequently and 50 pounds occasionally with his right arm. Even if the Court did discern a contradiction, it would still be proper to uphold the ALJ's RFC determination. *See Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989) (where it is possible to draw two inconsistent conclusions from evidence, and one conclusion represents ALJ's findings, court must affirm ALJ's decision).

*Past Relevant Work*

Arnold finally argues that it was improper for the ALJ to determine he was capable of

performing his past work as a contractor. At step four of the analysis, an ALJ may determine a claimant is not disabled when he or she "can still perform the actual duties of a past relevant job." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Stephens v. Shalala*, 50 F.3d 538, 542 (8th Cir. 1995)). At this point in the analysis, the burden remains on the claimant to prove he or she is unable to perform past relevant work. *Eichelberger*, 390 F.3d 591.

In making the determination that Arnold could perform past relevant work, the ALJ relied on the medical records, his RFC determination, and the testimony of a vocational expert who determined, based upon a hypothetical question consistent with Arnold's RFC, that Arnold was capable of performing his past relevant work as a contractor both as actually performed and as generally performed in the national economy. An ALJ is entitled to rely on the expertise of a qualified vocational expert. *See Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) (citing *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)). Accordingly, the Court finds no reversible error in the ALJ's decision that Arnold was capable of performing his past relevant work as a contractor.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. Accordingly, the decision of the Commissioner of Social Security should be affirmed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED:  March 26, 2013**

  /s/ *David P. Rush*
**DAVID P. RUSH**
**United States Magistrate Judge**